UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

LILIYA PILIPENKO and BORIS VOLCHKIN,
individually, and as administrators of the estate of
DENIS VOLCHKIN,

                                Plaintiffs,

                   -against-

CITY OF NEW YORK; Police Officer RICHARD
MOORE, Shield No. 26107; Police Officer
KRZYSTOF KONCEWICZ, Shield No. 19305;
Sergeant KAIYUEN LEUNG, Shield No. 1848;
Police Officer YEVGENIY IANKOVSKIY, Shield
No. 26285; Police Officer CRAIG MALAMED,
Shield No. 10938; NICHOLAS FELIX, Shield
No. 27048; MICHAEL SPESSARD, Shield No.
2036; and JOHN and JANE DOE 8 through 12,
individually and in their official capacities (the
names John and Jane Doe being fictitious, as the
true names are presently unknown),

                          Defendants.
----------------------------------------------------------------x

**FIRST AMENDED
COMPLAINT**

Jury Trial Demanded

15 CV 6053 (NG)(PK)

## <u>NATURE OF THE ACTION</u>

     1.    This is an action to recover money damages arising out of the violation

of plaintiffs' rights under the Constitution.

## JURISDICTION AND VENUE

2.      This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the Constitution of the United States, and the laws of the State of New York.

3.      The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343 and 1367(a).

4.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 (b) and (c).

5.      This Court has supplemental jurisdiction over the New York State claims pursuant to 28 U.S.C. § 1367.

## JURY DEMAND

6.      Plaintiffs demand a trial by jury in this action.

## PARTIES

7.      Plaintiff Liliya Pilipenko is a resident of Kings County in the City and State of New York. Ms. Pilipenko is also an administratrix of the estate of her deceased son, Denis Volchkin.

8.      Plaintiff Boris Volchkin is a resident of Kings County in the City and State of New York. Mr. Volchkin is also an administrator of the estate of his deceased son, Denis Volchkin.

9.     Defendant City of New York is a municipal corporation organized under the laws of the State of New York. It operates the NYPD, a department or agency of defendant City of New York responsible for the appointment, training, supervision, promotion and discipline of police officers and supervisory police officers, including the individually named defendants herein.

10.     Defendant Police Officer Richard Moore, Shield No. 26107 ("Moore"), at all times relevant herein, was an officer, employee and agent of the NYPD. Defendant Moore is sued in his individual and official capacities.

11.     Defendant Police Officer Krzystof Koncewicz, Shield No. 19305 ("Koncewicz"), at all times relevant herein, was an officer, employee and agent of the NYPD.  Defendant Koncewicz is sued in his individual and official capacities.

12.     Defendant Sergeant Kaiyuen Leung, Shield No. 1848 ("Leung"), at all times relevant herein, was an officer, employee and agent of the NYPD.  Defendant Leung is sued in his individual and official capacities.

13.     Defendant Police Officer Yevgeniy Iankovskiy, Shield No. 26285 ("Iankovskiy"), at all times relevant herein, was an officer, employee and agent of the NYPD.  Defendant Iankovskiy is sued in his individual and official capacities.

14.     Defendant Police Officer Craig Malamed, Shield No. 10938 ("Malamed"), at all times relevant herein, was an officer, employee and agent of the NYPD.  Defendant Malamed is sued in his individual and official capacities.

15.     Defendant Police Officer Nicholas Felix, Shield No. 27048 ("Felix"), at all times relevant herein, was an officer, employee and agent of the NYPD.  Defendant Felix is sued in his individual and official capacities.

16.     Defendant Police Officer Michael Spessard, Shield No. 2036 ("Spessard"), at all times relevant herein, was an officer, employee and agent of the NYPD.  Defendant Spessard is sued in his individual and official capacities.

17.     At all times relevant defendants John and Jane Doe 8 through 12 were police officers, detectives or supervisors employed by the NYPD.  Plaintiff does not know the real names and shield numbers of defendants John and Jane Doe 8 through 12.

18.     At all times relevant herein, defendants John and Jane Doe 8 through 12 were acting as agents, servants and employees of the City of New York and the NYPD.  Defendants John and Jane Doe 8 through 12 are sued in their individual and official capacities.

-4-

19.     At all times relevant herein, all individual defendants were acting under color of state law.

## STATEMENT OF FACTS

20.     On October 3, 2014, at approximately 5:30 p.m., defendants Moore, Koncewicz, Leung and Malamed arrived at plaintiffs' residence at 2466 East 26th Street in Brooklyn.

21.     The officers were responding to a 911 call regarding violent behavior exhibited by Denis Volchkin.

22.     When the officers arrived, they were met by plaintiff Liliya Pilipenko, who stated that she was terrified of her son Denis Volchkin, and that Denis had just locked her out of her house.

23.     Ms. Pilipenko told the officers that her son Denis had threatened to kill her in the past and had choked her earlier that day.

24.     Citing her son's violence and threats, Ms. Pilipenko told the officers she wanted him to be locked out of her house and an order of protection issued.

25.     The NYPD – and its 61st Precinct in particular – were aware that Denis Volchkin was violent, drug addled and unstable.

26.     In addition to Ms. Pilipenko, the officers spoke to a neighbor who affirmed that Mr. Volchkin was violent and had assaulted his mother.

27.     The neighbor told the officers that she had called 911 because Ms. Pilipenko was outside screaming for help, and a crowd was forming outside of her home.

28.     Without making any radio transmissions, defendants Moore and Koncewicz took Ms. Pilipenko's keys and entered the house.

29.     Denis Volchkin was not there, and the officers took photographs of Ms. Pilipenko, completed a Domestic Incident Report and left.

30.     Neither the defendants nor anyone in the chain of command mobilized ESU to conduct a search for Denis Volchkin.

31.     A little over two hours later, at approximately 7:45 p.m., another 911 call was received regarding Denis Volchkin having returned to the same address armed with knives.

32.     Without making any arrangements for ESU or anyone else to meet them at the location, the defendants returned to plaintiffs' home.

33.     Upon their arrival, defendants met Denis Volchkin's grandmother and mother, plaintiff Liliya Pilipenko, who stated that Denis Volchkin was intoxicated, angry and behaving erratically.

34.     Forensic analysis would later reveal that Denis Volchkin had multiple intoxicants in his system, including benzodiazepine, marijuana and four times the

legal limit of alcohol.

35.     Ms. Pilipenko told several of the defendants that her son was upstairs in the residence alone, highly dangerous and armed with multiple knives.

36.     Defendants Moore and Koncewicz observed Mr. Volchkin enter the home and barricade himself inside alone.

37.     In direct contravention of Patrol Guide Section 212-38: *Hostage/Barricaded Person(s),* knowing that Denis Volchkin was alone in a confined space, and without requesting the NYPD ESU Unit, conferring with their supervisors or even each other, the defendant officers made a decision to enter the home and confront Denis Volchkin alone.

38.     Using Ms. Pilipenko's key, Officers Moore and Koncewicz forced their way into the home through the back door.

39.     No radio transmissions or calls for assistance were made before Moore and Koncewicz entered the locked home, or afterward.

40.     Defendants Leung, Iankovskiy, Malamed, Felix and Spessard also arrived to the residence in response to the second 911 call.

41.     Defendants were all informed that Denis Volchkin was armed, alone, intoxicated and behaving erratically.

42.     Upon his arrival, defendant Iankovskiy was informed by Mr. Volchkin's

grandmother that Mr. Volchkin was alone upstairs in the residence and armed with knives.

43.     Defendants never requested assistance of any kind, including from ESU.

44.     Upon entering the residence, defendants Moore and Koncewicz were in possession of their firearms, as well as mace and asps.

45.     Defendants Moore and Koncewicz entered the living room and attempted to engage Mr. Volchkin in direct violation of several police department protocols; they observed several knives on a table in front of him.

46.     Defendants Leung, Iankovskiy, Malamed, Felix and Spessard gathered on the front porch as Moore and Koncewicz confronted Mr. Volchkin inside the living room.

47.     During the minutes that followed, not a single officer made a request for ESU or other assistance.

48.     Inside the Pilipenko home Moore and Koncewicz were presented with repeated opportunities to retreat, follow protocol and notify specially trained units.

49.     Unable, unqualified and untrained to de-escalate the situation, defendants Moore and Koncewicz needlessly caused the conditions to deteriorate over a period of several minutes.

50.     While still in a position to retreat and having non-lethal force options

available, officer Moore shot Denis Volchkin and mortally wounded him.

51.    In unspeakable pain, Denis Volchkin remained alive for at least forty-five before he was declared dead at Coney Island Hospital.

52.    Hearing the shot, Ms. Pilipenko ran into her residence and attempted to see her son.

53.    Defendants Moore and Koncewicz violently pushed Ms. Pilipenko back and refused to allow her to be with Denis Volchkin.

54.    Ms. Pilipenko never saw her son and only child alive again.

55.    Ms. Pilipenko was immediately taken into custody and brought to a precinct for a rigorous police interrogation by John/Jane Doe defendants.

56.    Upon learning of the events, plaintiff Boris Volchkin raced to the residence, where he was met by defendants and taken to a police precinct where he too was forced to undergo a police interrogation.

57.    Boris Volchkin left the precinct and returned to the family home on 26th Street. When Mr. Volchkin entered the home to find a pool of his son's blood on the floor.

58.    Defendants Leung, Iankovskiy, Malamed, Felix and Spessard contributed to the circumstances that caused Mr. Volchkin's death; failed to follow procedures when dealing with intoxicated and/or emotionally disturbed civilians,

including requesting the NYPD's Emergency Services Unit; and failed to prevent defendant Moore from unnecessarily killing Denis Volchkin, even though they had an opportunity to do so.

59.     Defendants Moore, Koncewicz, Leung, Iankovskiy, Malamed, Felix and Spessard failed to follow procedures when dealing with a barricaded suspect, including in failing to request that the NYPD's Emergency Services Unit respond to the incident, even though they had an opportunity to do so.

60.     Defendants are incompetent officers who were unfit and inadequately trained to respond to the incident.

61.     Within ninety days after the claims alleged in this Complaint arose, a written notice of claim was served upon defendants at the Comptroller's Office.

62.     At least thirty days have elapsed since the service of the notice of claim, and adjustment or payment of the claim has been neglected or refused.

63.     This action has been commenced within one year and ninety days after the happening of the events upon which the claims are based.

64.     Plaintiffs suffered damage as a result of defendants' actions. Plaintiffs and plaintiffs' decedent suffered pain and suffering, loss of love, loss of companionship, loss of comfort, loss of affection, loss of society, loss of solace, loss of moral support,

loss of protection, loss of advice, loss of care, pecuniary loss, conscious pain and suffering and loss of services.

## FIRST CLAIM
### Wrongful Death

65.     Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

66.     Defendants acted negligently in responding to Liliya Pilipenko's 911 calls.

67.     Defendants' negligence caused the death of Denis Volchkin.

68.     Plaintiffs are the next of kin of Denis Volchkin and the administrators of his estate.

69.     Plaintiffs have suffered financial damage as a result.

70.     As a direct and proximate result of this unlawful conduct, plaintiffs sustained the damages herein before alleged.

71.     Defendant City of New York, as an employer of the individual defendant officers, is responsible for their wrongdoing under New York State law pursuant to the doctrine of *respondeat superior*.

## SECOND CLAIM
### Unreasonable Force

72.     Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

73.     The defendants violated the Fourth and Fourteenth Amendments because they used unreasonable force in killing Denis Volchkin and assaulting and battering his mother and father, plaintiffs Lililya Pilipenko and Boris Volchkin.

74.     As a direct and proximate result of this unlawful conduct, plaintiffs sustained the damages hereinbefore alleged.

## THIRD CLAIM
### State Law Assault and Battery

75.     Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

76.     By their conduct, as described herein, the defendants are liable to plaintiffs for having assaulted and battered Denis Volchkin and his parents, plaintiffs Liliya Pilipenko and Boris Volchkin.

77.     Defendant City of New York, as an employer of the individual defendant officers, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

78.     As a direct and proximate result of the misconduct and abuse of authority stated above, plaintiffs sustained the damages alleged herein.

## FOURTH CLAIM
### Negligence; Negligent Hiring/Training/Retention

79.     Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

80.     Defendant City, through the NYPD, owed a duty of care to plaintiff to prevent the conduct alleged, because under the same or similar circumstances a reasonable, prudent, and careful person should have anticipated that injury to Denis Volchkin and plaintiffs or to those in a like situation would probably result from the foregoing conduct.

81.     All of the individual defendants were unfit and incompetent for their positions.

82.     Upon information and belief, defendant City knew or should have known through the exercise of reasonable diligence that the individual defendants were potentially dangerous.

83.     Upon information and belief, defendant City's negligence in screening, hiring, training, disciplining, and retaining these defendants proximately caused each of plaintiffs' injuries.

84.    As a direct and proximate result of this unlawful conduct, plaintiffs sustained the damages hereinbefore alleged.

## FIFTH CLAIM
### Intentional Infliction of Emotional Distress

85.    Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

86.    By reason of the foregoing, the defendants, acting in their capacities as NYPD officers, and within the scope of their employment, each committed conduct so extreme and outrageous as to constitute the intentional infliction of emotional distress upon plaintiffs.

87.    The intentional infliction of emotional distress by these defendants was unnecessary and unwarranted in the performance of their duties as NYPD officers.

88.    Defendants, their officers, agents, servants, and employees were responsible for the intentional infliction of emotional distress upon plaintiffs. Defendant City, as employer of each of the defendants, is responsible for their wrongdoings under the doctrine of *respondeat superior*.

89.    As a direct and proximate result of this unlawful conduct, plaintiffs sustained the damages hereinbefore alleged.

## SIXTH CLAIM
### Negligent Infliction of Emotional Distress

90.     Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

91.     By reason of the foregoing, the defendants, acting in their capacities as NYPD officers, and within the scope of their employment, each were negligent in committing conduct that inflicted emotional distress upon plaintiffs.

92.     The negligent infliction of emotional distress by these defendants was unnecessary and unwarranted in the performance of their duties as NYPD officers.

93.     Defendants, their officers, agents, servants, and employees were responsible for the negligent infliction of emotional distress upon plaintiff. Defendant City, as employer of each of the defendants, is responsible for their wrongdoings under the doctrine of *respondeat superior*.

94.     As a direct and proximate result of this unlawful conduct, plaintiffs sustained the damages hereinbefore alleged.

## SEVENTH CLAIM
### Deliberate Indifference

95.     Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

96.     The individual defendants were aware of a risk to the life and safety of Denis Volchkin and failed to act and/or acted improperly, in deliberate indifference to plaintiffs' and Denis Volchkin's federally-protected constitutional rights.

97.     Accordingly, defendants violated the Fourteenth Amendment because they acted with deliberate indifference the health and well-being of plaintiffs and Denis Volchkin.

98.     As a direct and proximate result of this unlawful conduct, plaintiffs sustained the damages hereinbefore alleged.

## EIGHTH CLAIM
### Denial of Due Process

99.     Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

100.    By their conduct as described herein, the individual defendants deprived plaintiffs and Denis Volchkin of due process of law.

101.    Accordingly, defendants violated the Fourteenth Amendment.

-16-

102.   As a direct and proximate result of this unlawful conduct, plaintiffs sustained the damages hereinbefore alleged.

## NINTH CLAIM
### Failure to Intervene

103.   Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

104.   Those defendants that were present but did not actively participate in the aforementioned unlawful conduct, observed such conduct, had an opportunity to prevent such conduct, had a duty to intervene and prevent such conduct and failed to intervene.

105.   Accordingly, the defendants who failed to intervene violated the Fourth, and Fourteenth Amendments.

106.   As a direct and proximate result of this unlawful conduct, plaintiffs sustained the damages hereinbefore alleged.

## TENTH CLAIM
### Liability of the City of New York
### for Constitutional Violations

107.   Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

108.   At all times material to this complaint, defendant City of New York, acting through its police department, and through the individual defendants, had *de facto* policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

109.   At all times material to this complaint, defendant City of New York, acting through its police department, and through the individual defendants, had *de facto* policies, practices, customs, and usages of failing to properly train, screen, supervise, or discipline employee police officers, and of failing to inform the individual defendants' supervisors of their need to train, screen, supervise or discipline said defendants. These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

110.   At all times material to this complaint, the defendant City of New York, acting through its police department and through the individual defendants, had *de facto* policies, practices, customs and/or usages of unnecessarily provoking, and/or unnecessarily resorting to deadly force when dealing with, emotionally disturbed and/or intoxicated individuals. Such policies, practices, customs and/or usages are a direct and proximate cause of the unconstitutional conduct alleged herein.

111.   At all times material to this complaint, the defendant City of New York, acting through its police department and through the individual defendants, had *de facto* policies, practices, customs and/or usages of unnecessarily resorting to deadly force when dealing with, a barricade situation. Such policies, practices, customs and/or usages are a direct and proximate cause of the unconstitutional conduct alleged herein.

112. As a direct and proximate result of this unlawful conduct, plaintiffs sustained the damages hereinbefore alleged.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiffs respectfully request judgment against defendants as follows:

(a) Compensatory damages against all defendants, jointly and severally;

(b) Punitive damages against the individual defendants, jointly and severally;

(c) Reasonable attorneys' fees and costs pursuant to 28 U.S.C. § 1988; and

(d) Such other and further relief as this Court deems just and proper.

Dated:     June 9, 2016
           New York, New York

_____
Gabriel P. Harvis
HARVIS & FETT LLP
305 Broadway, 14th Floor
New York, New York 10007
(212) 323-6880
gharvis@civilrights.nyc

JEFFREY A. ROTHMAN, Esq.
315 Broadway, Suite 200
New York, New York 10007
(212) 227-2980


*Attorneys for plaintiffs*

-20-